UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE INDIANA LABORERS WELFARE FUND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:18-cv-00463-JPH-MJD |
| JENNIFER VAN DALSEN, | ) ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment. [Dkt. 29.] On January 3, 2020, Judge James Patrick Hanlon designated the undersigned Magistrate Judge to "to issue interim orders, hold any necessary hearings, and enter a final report and recommendation on the appropriate disposition of Plaintiff's Motion for Summary Judgment" pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 35.] For the reasons set forth below, the Magistrate Judge recommends that Plaintiff's motion for summary judgment be **GRANTED** as to liability and **DENIED** with regards to Plaintiff's request for attorney fees, costs, and prejudgment interest.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On a motion for summary judgment, the properly supported facts asserted by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009)

("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). A party who bears the burden of proof on an issue may not rest on her pleadings, but rather must present evidence she has that demonstrates that there is a genuine issue of material fact that requires a trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The non-moving party must specifically identify the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("'[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" (quoting *Liberles v. Cook Cty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

## II. Facts of Record

The relevant facts, viewed in the light most favorable to Defendant Jennifer Van Dalsen,[1] the non-moving party, are as follow.

Plaintiff Board of Trustees of the Indiana Laborers Welfare Fund administers a self-funded employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002.[2] James Danaher, a participant of the Plan, designated his wife, Defendant Jennifer Van Dalsen, as a "dependent" under the Plan. [Dkt. 1 at 2.]

Danaher and Defendant divorced on October 17, 2013. [Dkt. 1-1.] Defendant did not elect Continuation Coverage through the Plan after the divorce. Between October 2013 and February 2014, Defendant underwent various medical tests, which were processed by the

---

[1] Defendant is proceeding *pro se* in this case and was provided with the notice required by Local Rule 56-1(k). [Dkt. 32.]
[2] The parties do not dispute that the Indiana Laborers Welfare Fund is an employee welfare benefit plan as defined by ERISA.

Frontier Toxicology LTD and billed to the Plan. [*See* Dkt. 30-1 at 43 & Dkt. 30-1 at 47.] Although Defendant no longer had coverage under the Plan because of her divorce, the Plan continued to pay for the claims on these lab tests, in an amount totaling $1,462.19. Plaintiff now seeks to recover these payments from Defendant.

### III. Discussion

Plaintiff moves for summary judgment on its claim that Defendant is liable to reimburse it for the mistaken payments in question, and also requests the Court to award it attorney fees, costs, and prejudgment interest.

A. <u>Liability under ERISA</u>

Under ERISA, a fiduciary may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3). Plaintiff's claim against Defendant to recover the funds paid for her medical expenses after her divorce is for equitable relief, and therefore, is authorized by § 1132(a)(3). *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (fiduciaries may bring § 502(a)(3) claims "to enforce plan terms").

Section 8.15 of the Plan states:

> Whenever benefit payments are made under the Plan which are in excess of eligible expenses or other Plan limits (including mistaken payments), the Board of Trustees shall have a right to recover the mistaken or excess amount from either -
>
> A) the person or agency who received it, or
>
> B) the Participant, Retiree or covered Dependent.
>
> In the case of the Participant, Retiree or covered Dependent, the Board of Trustees reserves the right to reduce future benefit payments under the Plan in order to correct a prior overpayment.

[Dkt. 1-2 at 2.] Section 11.13 of the Plan defines a "dependent" as "[t]he Spouse to whom the Participant or Retiree is legally married (not divorced or legally separated)." [Dkt. 30-1 at 57.]

Plaintiff has demonstrated that it made benefit payments on behalf of Defendant after she was no longer a "dependent" and was, therefore, no long entitled to receive such benefits under the Plan. *See* [Dkt. 30-1 (Melissa Wade's affidavit stating that Plaintiff was not notified of the divorce decree until June 2014, and would not have paid Defendant's benefits, unless she had elected to receive continuation coverage)]; [Dkt. 30-1 at 3 (Claims History records identifying the services provided on October 31, 2013 and the payments made on behalf of Defendant's medical expenses)]; [Dkt. 30-1 at 43 & Dkt. 30-1 at 47 (Explanation of Benefits records noting that Frontier Toxicology had submitted claims on October 31, 2013 and February 13, 2014, and sought payments from the Plan for the services provided to Defendant)]. Thus, pursuant to the Plan, Plaintiff is entitled to recover those mistaken payments from Defendant.

Defendant does not directly dispute these facts. Rather, she asserts[3] that, while she received a letter in August 2018 discussing the Plan's payments for her medical expenses, she did not receive a copy of these bills from the medical provider or Plaintiff. [Dkt. 33.] Defendant contends that she "contacted all doctors" and that none of them were able to verify the third-party lab, Frontier Toxicology, and the payments that were made on her behalf. [Dkt. 33 at 1.] She argues that "so much time has passed and neither the fund nor my insurance company has the bills or the contact information for this company now." [Dkt. 33 at 1-2.] Defendant further argues that she "was not notified until August 2018, which [she] then also asked for the bills or any information that [she] could take [sic] [her] insurance company for these to validate them." [*Id*.] She contends that if she had been notified in 2014, "it would have been easier to contact

---

[3] Defendant did not file an affidavit or declaration in support of her assertions in opposition to Plaintiff's motion for summary judgment as required by Rule 56(e).

4

[her] insurance" to verify and receive these bills. [*Id.*] These arguments by Defendant are unsupported by any evidence, and thus, are insufficient to create a genuine issue of material fact.

Plaintiff has submitted evidence, in the forms of its Claims History and Explanation of Benefits records, which establishes that the Plan paid for Defendant's lab tests, in an amount totaling $1,462.19. The Explanation of Benefits records indicate that Frontier Toxicology, submitted claims for the services it provided to Defendant on October 31, 2013, and received payments from the Plan in the amounts of $82.95 and $376.36. [*See* Dkt. 30-1 at 47-48.] The Explanation of Benefits records also indicate that Frontier Toxicology submitted claims for the services it provided to Defendant on February 13, 2014 and received payments from the Plan in the amounts of $819.00 and $183.88. [*See* Dkt. 30-1 at 43-44.] The Claims History documentation also includes details about each appointment and the approved charges by the Plan related to Defendant's medical expenses. [Dkt. 30-1 at 3.] Plaintiff further submitted an affidavit by Melissa Wade, the Administrative Coordinator for the Fund, stating that the "Fund did attempt to collect the overpayment from Jennifer Danaher, however, after unsuccessful attempts to do so, the Fund filed suit against her." [Dkt. 30-1.] Thus, the undisputed evidence in the record demonstrates that Plaintiff made mistaken payments on behalf of Defendant, and that Defendant is obligated by agreement, to repay these funds.

Accordingly, Plaintiff's motion for summary judgment is **GRANTED** with regard to Defendant's obligation to repay the $1,462.19 sought by Plaintiff.

### B. Entitlement to Attorney Fees, Costs, and Prejudgment Interest

In addition to reimbursement for the mistaken payments provided by the Plan, Plaintiff seeks attorney fees, costs, and prejudgment interest. For the reasons set forth below, the Court declines to award them.

1. *Attorney Fees and Costs*

Plaintiff claims it is entitled to attorney fees and costs pursuant to 29 U.S.C. § 1132 (g). [Dkt. 30 at 8.] The award of fees and costs in this case is discretionary, not mandatory. *See* 29 U.S.C. § 1132(g)(1) (providing that, in "any action under this subchapter (other than an action described in paragraph (2))[4] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (holding that, under § 1132(g)(1),"a court 'in its discretion' may award fees and costs 'to either party,' as long as the fee claimant has achieved 'some degree of success on the merits'") (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Having prevailed on its motion for summary judgment, Plaintiff has certainly achieved "some degree of success on the merits" on its reimbursement claim for the mistaken payments under ERISA.

The Court next must exercise its discretion to decide whether an award of attorney's fees and costs is appropriate. The Seventh Circuit has recognized two tests to guide such a determination. The first test weighs "whether the position of the party against whom the fees are sought was 'substantially justified.'" *Temme v. Bemis Co.*, 762 F. 3d 544, 549 (7th Cir. 2014) (internal quotations omitted). To be "substantially justified," a position must be "something more than nonfrivolous, but something less than meritorious—and taken in good faith." *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011). This test considers "a party's posture during the case as a whole, rather than treating each segment as an 'atomized line-item[ ].'" *Temme,* 762 F.3d at 551 (quoting *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 162 (1990)).

---

[4] Section (g)(2), which relates to actions brought to enforce 29 U.S.C. § 1145, is not relevant to this case.

The second test, looks to the following factors to determine whether a fee award is appropriate: "1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." *Id.* (citing *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505-06 (7th Cir. 2011)) (internal quotations omitted). No single factor is dispositive. *Id.*

Both tests "essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Kolbe, 657 F.3d at 506* (internal quotations omitted). Thus, the five-factor test "is used to 'structure or implement, rather than to contradict the substantially justified' test." *Id.* Following *Hardt*, however, "[a] district judge need not find that the party ordered to pay fees has engaged in harassment or otherwise litigated in bad faith." *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011). There is a "'modest presumption' in favor of awarding fees to the prevailing party, though that presumption can be rebutted." *Jackman Fin. Corp.*, 641 F.3d at 866 (internal quotation marks omitted).

Since Plaintiff seeks attorney fees and costs from Defendant in this case, the Court must consider Defendant's position under both tests. In determining whether Defendant's position was "substantially justified," the Court must determine whether her position was "'justified to a degree that could satisfy a reasonable person.'" *Trustmark Life Ins. Co. v. University of Chicago Hospitals*, 207 F.3d 876, 884 (7th Cir. 2000) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). A position is not substantially justified if it is without a "solid basis." *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992). In this action,

7

there is no indication that Defendant's litigation position was due to anything other than her legitimate desire to obtain information about the medical expenses in question from Plaintiff, in order to verify that it had mistakenly made payments on her behalf, as alleged. Thus, Defendant's position—that she was entitled to receive the evidence that supported Plaintiff's claim—was substantially justified.

The Court must also consider the five-factor test to determine whether an award of attorney fees and costs is appropriate. As noted above, there is no showing that Defendant intended to harass Plaintiff by refusing repayment; rather she consistently requested the relevant bills from Plaintiff in order to substantiate its claims. [*See* Dkt. 5; Dkt. 19; & Dkt. 33.] This factor weighs in favor of denying the request for fees and costs. Next, neither party has offered any information regarding Defendant's ability to satisfy a fee award and costs. Therefore, this is a neutral factor.

The third factor—whether an award might deter others acting under similar circumstances—also weighs in favor of denying the fee request and costs. Defendant explains that she was:

> not notified until August 2018, which I then also asked for the bills or any information that I could take my insurance company for these to validate them. Instead it was filed in court. Had the fund have [sic] contacted me in 2014 and provided the bills, it would have been easier to contact my insurance, as so much time has passed and neither the fund nor my insurance company has the bills or the contact information for this company now.

[Dkt. 33 at 1.] Given the reasonableness of Defendant's position, it is unnecessary to award fees and costs in order to deter others from behaving similarly. The fourth factor, the benefit to the Plan, is largely irrelevant since this is an individual dispute involving a relatively small amount of money. Finally, as to the fifth factor, the relative merits of the parties' positions, the Court notes that Plaintiff's consistent delays, first in seeking repayment and then in providing the

8

documentation requested by Defendant, is what made it necessary for Defendant to demand the documentation; it is not surprising that Defendant did not remember the lab tests in question nor have the relevant documents herself.  See *Preze v. Bd. of Trustees, Pipefitters Welfare Fund Local 597,* 1992 WL 38398, at *5 (N.D. Ill. Feb. 24, 1992) (refusing to award fees and costs to the prevailing defendant under § 1132(g) because "[a]fter an extensive review of the complex law relating to ERISA," the court held that plaintiff stated a "reasonable interpretation of the Plan language" and made a "legitimate argument") (appealed on other grounds and affirmed in *Preze v. Bd. of Trustees, Pipefitters Welfare Fund Local 597,* 5 F.3d 272, 275 (7th Cir. 1993)).

Viewing the relevant factors as a whole, the Court concludes that they weigh against awarding attorney fees and costs to Plaintiff.  Accordingly, Plaintiff's request for attorney fees and costs is **DENIED**.

### 2. *Prejudgment Interest*

Plaintiff also seeks prejudgment interest on the amount of the reimbursement.

An award of prejudgment interest may be appropriate in ERISA cases, especially where necessary to fully compensate the beneficiary or to prevent unjust enrichment.  See *Trustmark,* 207 F.3d at 885; *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.,* 896 F.2d 228, 236-237 (7th Cir. 1990).  The Seventh Circuit has recognized a presumption in favor of awarding prejudgment interest in ERISA cases, and has further explained that the decision is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities."  See *Fritcher v. Health Care Serv. Corp.,* 301 F.3d 811, 820 (7th Cir. 2002); *Trustmark,* 207 F.3d at 885 (noting that one factor to consider in determining whether to award prejudgment interest is the presence of bad faith or good will); *American Nat. Fire Ins. Co. v. Yellow Freight Systems, Inc.,* 325 F.3d 924, n. 11 (7th Cir. 2003) (noting that when the

9

prevailing party caused an "unreasonable delay," it may be within the court's discretion to deny prejudgment interest).

Here, the Court finds that a prejudgment interest award is inappropriate because, as discussed above, Defendant has acted in good faith. In addition, the Court notes that Plaintiff failed to exercise due diligence to remedy this situation by failing to provide Defendant with the relevant documentation that she consistently requested until well after the commencement of the underlying lawsuit. Thus, Plaintiff is not entitled to prejudgment interest.

### IV. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** as to liability and that judgment be entered for Plaintiff and against Defendant in the amount of $1,462.19. The Magistrate Judge further recommends that Plaintiff's request for attorney's fees, costs, and prejudgment interest be **DENIED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 18 FEB 2020

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

JENNIFER VAN DALSEN
5907 S. 600 E.
Lafayette, IN 47909

Richard J. Shagley, II
WRIGHT SHAGLEY & LOWERY
richards@wslfirm.com